UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL E.,

          Plaintiff,

      v.                                                 **DECISION AND ORDER**
                                                                       20-CV-6754S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.        Plaintiff Michael E.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits under Title II of the Act and for supplemental security income under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff filed an application for disability insurance benefits under Title II on July 6, 2017, and an application for supplemental security income under Title XVI of the Act on June 9, 2017. (R.[2] at 103-04.) Plaintiff alleged disability beginning on March 21, 2003—a date he later amended to August 11, 2016—due to active fracture of his left foot, limited lifting because of back and foot, pacemaker-arrythmia and heart issues, fused lower back, bipolar disorder, ADHD, learning disorder, explosive personality disorder, schizoaffective disorder, and borderline personality disorder. (R. at 45, 62-63.) Plaintiff's

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify plaintiff by his first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ").

3. ALJ Michael W. Devlin held a hearing on October 3, 2019, at which Plaintiff appeared and was represented by counsel. (R. at 41-61.) Vocational Expert Sakinah Malik also appeared and testified by telephone. At the time of the hearing, Plaintiff was 34 years old, with a high-school education (IEP diploma), and no relevant past work experience. (R. at 31, 48, 51.)

4. ALJ Devlin considered the case *de novo* and, on December 26, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 12-33.) Plaintiff appealed the ALJ's decision to the Appeals Council, and on August 3, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on September 23, 2020, challenging the Commissioner's final decision.[3]

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 14.) Plaintiff filed a response on March 1, 2022 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

[3] The ALJ's December 26, 2019, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity

of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

 9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

 10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

4

C.F.R. § 416.920(a)(4); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since his alleged onset date of August 16, 2016. (R. at 16.) At step two, the ALJ found that Plaintiff has the following severe impairments: partial congenital block vertebra, L2-L3; status post fusion surgery L4-L5; status post fracture injury in the left foot; history of heart disease; status post pacemaker placement; hypertension; asthma; insomnia; bipolar disorder; learning disorder; personality disorder; and substance abuse. (<u>Id.</u>)

12.     At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(c)). (R. at 16-17.)

13.     Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that:

> [he can] occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight hour day; sit about six hours in an eight hour day; occasionally push and/or pull 20 pounds; frequently climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, scaffolds; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; little to no contact with the general public; and able to consistently maintain concentration and focus for up to two hours at a time.

(R. at 20.)

14.    At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 31.) At step five, the ALJ found that there was a significant number of jobs in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ found that Plaintiff was not disabled. (R. at 32.)

15.    Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ rejected the opinion of consultative physician Dr. Harbinder Toor that Plaintiff had moderate to marked limitations in standing and walking and then formulated an RFC untethered to any medical evidence. Defendant argues the ALJ's determination is supported by substantial evidence.

16.    The record demonstrates that Plaintiff had both physical and mental impairments, and that these issues impacted each other. As a teenager, he underwent fusion of the L2-L3 vertebrae, and bony fusion was observed on April 5, 2016. (R. at 412.) Disc bulging was observed at L4-L5 on April 12, 2016. (R. at 407.) Providers recommended physical therapy but Plaintiff asserted, "he is never going again." (Id.) Providers frequently his adjusted pain medication due to the impacts it had on his mental functioning. (R. at 526, wanted to discontinue Cymbalta because it causes him to be manic; 546, he wanted to discontinue Baclofen due to its side effects.)

17.    Plaintiff also experienced ongoing issues with his left foot, including a Lisfranc tear and repair. (R. at 397.) He repeatedly failed to follow doctors' instructions regarding his foot. On June 21, 2016, Dr. Christopher Brown observed that he was a "noncompliant patient" who had checked himself out after a procedure, then "ended up coming back with mental status changes and walking on his ankle." (R. at 404.) On July 5, 2016, Plaintiff had been noncompliant and was walking in his cast. (R. at 395.) On

August 10, 2016, Dr. Paul Stasko noted that Plaintiff had a boot but would not wear it, and that he presented with an uncovered open wound. (R. at 393.) On September 13, 2016, Dr. Stasko noted that Plaintiff, who was in jail at the time, had left foot pain, but had been weightbearing on his left foot. (R. at 764.)

18. On July 13, 2017, Dr. Stasko observed degenerative joint disease in the tarsometatarsal, with status post chronic Lisfranc surgery. (R. at 768.) On October 11, 2017, Plaintiff injured his left foot while walking down a ladder; he stated that he had not done surgery because he was "busy with other things," including his back medication and "social issues." (R. at 770.)  Plaintiff underwent left foot surgery in January 2018. He was told not to walk on his splint postoperatively, but, as before, treatment providers noted that the splint had been walked on (R. at 776, 778, 780.) Around this time, Plaintiff went to jail. He was told to be "nonweightbearing," but treatment providers noted that he had been walking on his cast while in jail. (R. at 782, 784.)

19. In addition to physical impairments, the record contains evidence of Plaintiff's diagnoses of and treatment for bipolar disorder, antisocial personality disorder, borderline personality disorder, ADHD, and learning disorder, as well as alcohol and nicotine dependence. (See, e.g., R. at 937, 983.) Plaintiff had a long history of physical aggression, including toward family members, which led at least once to incarceration. (R. at 426, 434, 772, 927, 934, 941, 1040.) Treatment providers regularly noted Plaintiff's poor judgment, impulsivity, limited insight, and circumstantial thought process. (See, e.g., R. at 864, 866, 927, 929, 933, 1021.)

20. The only medical opinion statement in the record is from Dr. Harbinder Toor, an independent medical examiner. At a consultative visit on September 5, 2017, Dr. Toor

observed an abnormal gait with limping to the left side. (R. at 730.) Plaintiff declined heel walking and squatting, had difficulty getting on and off the exam table, and rose from his chair with difficulty. (R. at 730.) Dr. Toor observed a positive straight leg raise, and plantar and dorsiflexion of 5% in his left ankle (R. at 731.). Dr. Toor opined that Plaintiff had moderate to marked limitations in standing, walking, bending, lifting, carrying, and balance, and moderate limitations sitting a long time. (R. at 732.)

21.     The ALJ "did not accept" Dr. Toor's assessment of moderate to marked limitations. (R. at 30.) As a reason for his rejection of Dr. Toor's opinion, the ALJ explained that "the evidence supports the claimant was noncompliant with treatment, as well as the evidence as a whole did not support moderate to marked limitations with respect to standing, walking, bending, lifting, carrying or balancing. In fact the claimant was on a ladder…which does not support moderate to marked limitations with respect to his posture limitations." (Id.)

22.     The ALJ also found that Plaintiff's alleged limitations were not credible because he failed to comply with treatment and engaged in irrational courses of behavior. (See R. at 26.) For example, the ALJ noted that Plaintiff was scheduled for surgery on his left foot several times before it took place, refused to quit smoking, and injured his left foot while walking down a ladder—which the ALJ took as evidence of his ability, or perceived ability, to climb a ladder. The ALJ also noted Plaintiff's failure to follow the advice of several doctors not to place weight on his foot. (R. at 26.)

23.     The relevant regulations require that when an ALJ assesses the credibility of a claimant's statements, he is entitled to consider treatment the claimant received to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). The ALJ cannot,

8

however, "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7p, 1996 WL 374186, at *7. "This is because, as previous courts have recognized, a person who suffers from psychological and emotional difficulties may lack the rationality to decide whether to continue treatment or medication." Williams v. Colvin, No. 15-CV-468-FPG, 2016 WL 4257560, at *3 (W.D.N.Y. Aug. 12, 2016) (internal quotation marks and citations omitted); see also Simpson v. Colvin, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *15 (W.D.N.Y Aug. 25, 2016) (noting that "faulting a person with diagnosed mental illnesses ... for failing to pursue mental health treatment is a questionable practice") (citations omitted).

24.     This rule is particularly relevant to the instant matter, because the ALJ found that Plaintiff had the severe impairments of bipolar disorder, learning disorder, and personality disorder. (See R. at 16.) "Courts have recognized that failure to comply with treatment can be a direct result of bipolar disorder." Jimmeson v. Berryhill, 243 F. Supp. 3d 384, 391 (W.D.N.Y. 2017) (noting that "the ALJ repeatedly drew negative inferences from plaintiff's struggles with treatment compliance, but did not distinctly consider whether such difficulties could be a manifestation of plaintiff's bipolar or impulse control disorders"). Here, Plaintiff was clearly making poor decisions regarding his foot care and was not following doctors' instructions, but the ALJ failed to consider this noncompliance in light of his significant his mental health issues. Plaintiff also appears to have been

9

putting weight on his foot while he was incarcerated, yet the ALJ failed to discuss whether compliance with doctors' instructions was even possible while Plaintiff was in jail.

25. The ALJ drew negative inferences from Plaintiff's lack of treatment compliance, but he failed to consider whether these difficulties could be a manifestation of plaintiff's bipolar or other mental health disorders. Jimmeson v. Berryhill, 243 F. Supp. 3d 384, 391 (W.D.N.Y. 2017). Without such discussion, this Court finds the ALJ's rejection of Dr. Toor's opinion to be unsupported by substantial evidence. Henley v. Berryhill, No. 17-CV-445-FPG, 2018 WL 3866670, at *4 (W.D.N.Y. Aug. 15, 2018)

26. Plaintiff also argues that the ALJ, having rejected Dr. Toor's opinion, impermissibly crafted an RFC based on his own lay opinion. This Court offers no opinion on this argument at this time since the case is being remanded on other grounds. On remand, the ALJ is free to address this argument to the extent he deems necessary.

27. After carefully examining the administrative record, this Court finds cause to remand this case to the Commissioner for further administrative proceedings consistent with this decision. Plaintiff's motion for judgment on the pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.